U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2023 DEC 26 PM 12: 49

CLERK

BY _____ UW _____

PETER GOLRICK and JEANNE GOLRICK,       )
                                        )
          Plaintiffs,                   )
                                        )
     v.                                 )      Case No. 2:23-cv-80
                                        )
NATIONSTAR MORTGAGE, LLC,               )
d/b/a Mr. Cooper,                       )
                                        )
          Defendant.                    )

**OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS,**
**DENYING AS MOOT DEFENDANT'S MOTION TO STAY**
**DISCOVERY, AND GRANTING LIMITED LEAVE TO AMEND**
(Docs. 14, 24)

On May 1, 2023, Plaintiffs Jeanne and Peter Golrick, representing themselves, commenced this action against Defendant Nationstar Mortgage, LLC, doing business as Mr. Cooper, with a "Complaint for the Conversion of Property[.]" (Doc. 1.) On June 27, 2023, Defendant moved to dismiss the case for lack of subject matter jurisdiction and failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and (6). (Doc. 14.) On August 30, 2023, Defendant moved to stay discovery. (Doc. 24.) Following receipt of the parties' briefing, the court held a hearing on November 13, 2023, after which it took the motions under advisement.

**I.     Allegations of Plaintiffs' Complaint.**

Plaintiffs assert that this court has diversity jurisdiction under 28 U.S.C. § 1332. They contend that the lender left 2139 VT Route 30, Townshend, Vermont ("the Property") "abandoned, and eventually assigned the mortgage to [Defendant]." (Doc. 1 at 4.) Plaintiffs allege that they "took an interest" in the Property in 2021, "complet[ing] a private arrangement with Mr. Morrow, [the former owner of the Property,] with no counter party nexus involved[.]" *Id.* A copy of a deed from Mr. Morrow to Plaintiffs was

recorded in the Townshend, Vermont land records on August 16, 2021. *See* Doc. 1-3 at 2.[1] They contend that Defendant "wishes to break the intact title, by theft, through illegal and unlawful possession under the guise of foreclosure[.]" (Doc. 1 at 4.)

Plaintiffs allege that "no deed from anyone in the chain of title to [Defendant] has been executed." *Id.* (capitalization and emphasis omitted). Instead, "[t]here was simply a mortgage lien in the original amount of $212,000.00 which was between [Mr. Morrow] and the earlier lender[]." *Id.* at 5. Plaintiffs do not allege that they assumed the mortgage or paid Mr. Morrow's debt secured by the Property. They nonetheless maintain there is no "nexus" between them as the "current 'of record owners[,]'" *id.* and the mortgage debt even though it is in the Property's chain of title.

In their briefing, Plaintiffs contend that because Defendant abandoned the property in early 2019, allowing it to deteriorate, then filed the foreclosure action in November 2020 but failed to serve the parties until July and August of 2021, or to file the Foreclosure Complaint in the land records until June 2021, and "chose to remain silent" when "offered at least two opportunities to settle the matter of the original encumbrance,"[2] the doctrine of laches "destroys [Defendant's] right to bring an equitable claim" such as the foreclosure. (Doc. 19 at 6-7.) A self-represented plaintiff, however, must adhere to the well-established rule that a party cannot amend his or her claim through a brief. *See Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 810 F.

---

[1] The copy of the deed submitted by Plaintiffs consists of three pages. However, the copy of the deed Defendant submitted is four pages. *Compare* Doc. 1-3 *with* Doc. 14-5. Page two of the deed, recorded at Book 119, page 602 of the Townshend land records, is missing in Plaintiffs' version. That page notes, among other things, a Mortgage pledge to Nationstar Mortgage Corporation, recorded at Book 110, page 230, and a Corporate Assignment of Mortgage to Nationstar Mortgage Corporation LLC D/B/A Mr. Cooper, recorded at Book 116, page 734. (Doc. 14-5 at 2.)

[2] Settlement negotiations are generally inadmissible to prove liability. *See* Fed. R. Evid. 408(a)(2) ("[C]onduct or a statement made during compromise negotiations . . . is not admissible . . . to prove . . . a disputed claim[.]"); *see also 360Heros, Inc. v. Mainstreet Am. Assurance Co.*, 816 F. App'x 555, 557 (2d Cir. 2020) ("Rule 408(a) of the Federal Rules of Evidence prohibits parties from offering evidence of settlement negotiations to prove or disprove the validity . . . of a claim[.]").

App'x 17, 20 (2d Cir. 2020) (stating a plaintiff may not amend his claims by "advocating a different theory of liability in an opposition brief wholly unsupported by factual allegations in the complaint[]").[3] The court thus does not consider allegations set forth only in Plaintiffs' brief in making its determination.

Plaintiffs seek an injunction preventing Defendant from taking possession of the Property. They further request declarations including that: the original mortgagee is "no longer a party with interest []as they have been made whole by their . . . assignment to [Defendant]"; Defendant is a "lienholder assignee, with[]out any deed"; Defendant has no ownership interest in the Property as Defendant was "made fiscally whole by [its] own actions of an alleged auction and receipt of sufficient funds on a deceptive recorded instrument"; and Plaintiffs are "owner and possessors" of the Property. (Doc. 1 at 6-7.) They seek $3,300,000 in damages consisting of $300,000 in compensatory damages and three million dollars in punitive damages. *Id.* at 7.

Plaintiffs maintain they are entitled to monetary relief because: (1) "In good faith they purchased the Property, improved it, have been maintaining it, and have resided in it"[4] and (2) "The punitive damages are to compensate [Plaintiffs] for undue stress brought on by [Defendant] in the attempt to steal [their] home, and to remind [Defendant] that these actions are not to be repeated with any party." *Id.* (capitalization omitted).

Courts afford pleadings filed by self-represented parties "special solicitude." *See Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (internal quotation marks omitted). The court is thus required to read a self-represented plaintiff's complaint liberally,

---

[3] Even if the court were to consider this argument, laches is not a standalone claim but an affirmative defense. *See Vt. Nat'l Bank v. Dowrick*, 481 A.2d 396, 398 (Vt. 1984) (explaining laches is an affirmative defense, "not a cause of action in and of itself cognizable as a counterclaim" or otherwise); *see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 33 (2017) ("Laches is a defense developed by courts of equity[.]") (internal quotation marks omitted). As an equitable claim, laches does not apply when there is an adequate remedy at law. *See id.* (citing *Wehrman v. Conklin*, 155 U.S. 314, 326 (1894) ("Though a good defense in equity, laches is no defense at law.")).

[4] Plaintiffs assert that "purchase and rehabilitation costs have restored the Property to a value of approximately $300,000." (Doc. 1 at 7) (capitalization omitted).

construe it to raise the strongest arguments it suggests, *see Harris v. Miller*, 818 F.3d 49, 56 (2d Cir. 2016) (per curiam), and hold it "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). However, "[n]otwithstanding the liberal pleading standards afforded [self-represented] litigants, federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction." *Jiles v. Rochester Genesee Reg'l Transp. Auth.*, 317 F. Supp. 3d 695, 700 (W.D.N.Y. 2018) (internal quotation marks omitted) (first alteration in original).

In addition, self-represented litigants must satisfy the plausibility standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80-81 (2d Cir. 2020) (explaining self-represented litigant was required, "[t]o survive dismissal," to "plead enough facts to state a claim to relief that is plausible on its face, and that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (internal quotation marks and footnote omitted).

## II.    Procedural Background.

On May 9, 2023, Plaintiffs filed a motion for an immediate temporary restraining order ("TRO"), which was denied without prejudice on May 10, 2023. On May 11, 2023, Plaintiffs again moved for an immediate TRO, which was denied without prejudice on May 12, 2023. On May 12, 2023, Plaintiff Jeanne Golrick filed a third motion for TRO together with a supporting affidavit signed under penalty of perjury. (Doc. 6.) On June 27, 2023, Defendant opposed Plaintiffs' TRO motion and moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and (6). (Docs. 14, 15.) At Plaintiffs' request, on July 11, 2023, the court held a hearing on the then-pending TRO motion. At the hearing, the court took judicial notice of the Vermont Superior Court filings in the record and denied Plaintiffs' third motion for a TRO.

On July 27, 2023, Plaintiffs opposed Defendant's motion to dismiss, and Defendant timely replied. (Docs. 19, 20.) On August 17, 2023, Plaintiffs filed a motion to "quash" the motion to dismiss. (Doc. 21.) On August 30, 2023, Defendant opposed the

4

motion to quash and moved to stay discovery pending the court's decision on the motion
to dismiss. (Docs. 23, 24.) Plaintiffs oppose the stay of discovery, and the motion is fully
briefed. (Docs. 26, 27.) On November 13, 2023, the court held a hearing on Defendant's
motions to dismiss and to stay discovery and on Plaintiffs' motion to quash, which the
court treated as a sur-reply to the motion to dismiss.

## III.    Judicial Notice of Vermont Superior Court Action and Orders.

The court takes judicial notice of the Vermont Superior Court docket in *Nationstar
Mortgage LLC d/b/a Mr. Cooper v. Gregg Morrow*, 20-CV-00795, Windham Unit, and
of the filings from that litigation in the record.[5] Dkt. Entry No. 18; *see also Mangiafico v.
Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (explaining "docket sheets are public
records of which [a] court [can] take judicial notice"); *Williams v. N.Y.C. Hous. Auth.*,
816 F. App'x 532, 534 (2d Cir. 2020) ("state court decision[s] . . . [are] appropriate for
judicial notice" as public records).

The Vermont Superior Court proceedings between Defendant and Mr. Morrow
began in November 2020 when Defendant filed a Foreclosure Complaint which was
recorded in the Townshend, Vermont land records on June 28, 2021. *See* Doc. 14-4 at 8.
On November 4, 2021, the Vermont Superior Court granted a Judgment and Decree of
Foreclosure by Judicial Sale. *See* Doc. 14-7. On December 7, 2021, the court denied Mr.
Morrow's motion to stay and entered a Final Order awarding Defendant $268,604.15.

On January 7, 2022, Plaintiff Jeanne Golrick filed motions in the Vermont
Superior Court action seeking, among other things, to discharge the mortgage
encumbering the Property. On February 24, 2022, Defendant's motion to strike Ms.
Golrick's motions was granted. In so ruling, the Vermont Superior Court noted "the
status and standing of the filer [Ms. Golrick] is dubious." (Doc. 14-12 at 1.) Mr. Morrow

---

[5] Defendant's counsel submitted a declaration in support of Defendant's motion to dismiss with
exhibits including copies of Vermont Superior Court Orders. *See* Doc. 14-2 through 14-12.
These exhibits do not include an Order dated June 17, 2023, pertaining to the removal of
personal property by the Golricks or an Order dated June 30, 2023, denying a June 23, 2023
motion to reconsider filed by the Golricks.

also moved to discharge the mortgage, requested a hearing, and moved to expunge a court record, all of which were denied on March 8, 2022.

In September 2022, Mr. Morrow filed an appeal with the Vermont Supreme Court that was dismissed by that court the same month. On October 19, 2022, Mr. Morrow moved for an injunction, which was denied the next day. A public foreclosure sale was held on October 21, 2022, at which Defendant was the highest bidder with a bid of $284,844.80. On November 3, 2022, the Vermont Superior Court granted Defendant's motion for writ of possession[6] and, on November 17, 2022, entered an Order Confirming Sale. (Docs. 14-9, 14-10.)

Defendant states that Plaintiffs "were ultimately evicted from the Property on May 9, 2023," (Doc. 14-1 at 5), eight days after commencing this action and the same day they filed their first motion for a TRO. Plaintiffs assert they "voluntar[ily] relocat[ed] in light of the order for possession from [the] Superior Court[.]" (Doc. 19 at 1.)

In a May 16, 2023 Entry Order, the Vermont Superior Court noted: "Throughout the litigation in this case[,] the Golricks have insisted that they own the [P]roperty[,] having purchased it from Mr. Morrow." (Doc. 14-12 at 7.) The Vermont Superior Court docket lists the case as disposed as of June 30, 2023.

## IV.   Conclusions of Law and Analysis.

### A.   Defendant's Motion to Dismiss.

Defendant asserts that the court lacks subject matter jurisdiction over this case based on the *Rooker-Feldman* doctrine because granting the relief Plaintiffs seek would require the court "to look behind the state court foreclosure judgment[.]" (Doc. 14-1 at 2.) It also contends that Plaintiffs have failed to state a claim on which relief can be granted because the "public documents filed in connection with the state court foreclosure [proceeding] demonstrate conclusively that the issues raised in the Complaint have

---

[6] The docket also shows a second writ of possession issued by the Vermont Superior Court in favor of Defendant on March 6, 2023.

already been adjudicated in the foreclosure [proceeding] and are therefore barred by the doctrine of res judicata." *Id.*

Plaintiffs oppose Defendant's motion, arguing that dismissal should be denied because Plaintiffs:

> [1] acknowledge the earlier outcomes, and so are neither re-litigating nor re-arguing events of the former superior court matter[;]
>
> [2] are documenting facts and actions subsequent to, and from the "rear view mirror"[] in order that [Plaintiffs] may present their intentions in this instant matter of demonstrating two legal applicable concepts [] "acting in bad faith" and "*laches*" of [Defendant] during and after that disposed lower court matter. [Plaintiffs] fully comprehend that [Defendant] continues in its ongoing fraud and deception (by property and title theft) as a basis for this federal matter which remains . . . Conversion of Real Estate.

(Doc. 19 at 3-4.) They contend they "are seeking validation and compensation from the underlying fraud of [Defendant] in the earlier closed matter[.]" *Id.* at 1.

### 1.     Whether to Dismiss Plaintiffs' Case for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1).

"An argument that the court does not have subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine is properly considered under Rule 12(b)(1)." *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 273 (S.D.N.Y. 2018). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction should be considered first. *Koeller v. Numrich Gun Parts Corp.*, 2023 WL 3591176, at *2 (N.D.N.Y. May 23, 2023) ("When a defendant seeks dismissal under Rule 12(b)(1) as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first[.]") (internal quotation marks omitted).

A case is properly dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) "if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

> In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all

> reasonable inferences in favor of the party asserting jurisdiction. The court
> may resolve the disputed jurisdictional fact issues by referring to evidence
> outside the pleadings, such as affidavits, and if necessary, hold an
> evidentiary hearing.

*Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (internal alteration, citation, and quotation marks omitted). "A plaintiff asserting [federal] subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Plaintiffs seek the court's involvement in "the earlier closed matter," which was a foreclosure that the Vermont state courts have adjudicated. "Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). The doctrine rests on the principle that "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). Pursuant to this doctrine, the court may not entertain "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

The Supreme Court has identified four requirements for the application of the *Rooker-Feldman* doctrine. "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain[] of injuries caused by [a] state-court judgment[.] Third, the plaintiff must invit[e] [federal] district court review and rejection of [that] judgment[]. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced[.]" *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks and footnote omitted) (fifth and eighth alterations added). "Where all four requirements are met, a district court must dismiss for lack of subject matter jurisdiction." *Hylton*, 338 F. Supp. 3d at 274.

8

Plaintiffs argue that *Rooker-Feldman* does not apply because the parties are different in this matter from those who participated in the Vermont Superior Court. Defendant contends that *Rooker-Feldman* bars Plaintiffs' claims because of privity between Plaintiffs and Mr. Morrow and because Plaintiffs participated in the state court action "through multiple unsuccessful filings[.]"[7] (Doc. 20 at 2.)

Plaintiffs' Complaint in this action seeks, in part, relief that would reverse the Vermont Superior Court's Judgment and Decree of Foreclosure in favor of Defendant and its November 17, 2022 Order confirming the subsequent sale. Although Plaintiffs were not a named party in the state court action, *Rooker-Feldman* still applies: "Someone who loses an ownership interest in property through a state in rem foreclosure proceeding against the property has lost in state court" even if they were not a "named part[y]" in that earlier action. *Dorce v. City of New York*, 2 F.4th 82, 102 (2d Cir. 2021).

To the extent Plaintiffs allege Defendant "stole" the Property from them, *see* Doc. 1 at 7, that claim has been adjudicated as well. Under Vermont law, "the filing of a foreclosure complaint in the town clerk's office constitutes notice to all persons who subsequently acquire 'any interest' in the mortgaged premises." *Green Mountain Bank v. Bruehl*, 536 A.2d 554, 556 (Vt. 1987). "Without further notice or service, those persons shall be bound by the judgment entered in the cause and be foreclosed from all rights or equity in the premises as completely *as though they had been parties in the original action*." 12 V.S.A. § 4932(b) (emphasis supplied). As a result, because Plaintiffs acquired their interest in August 2021, after the June 2021 filing of the Foreclosure Complaint, they are deemed to have notice of the Vermont Superior Court proceedings and, indeed, they attempted to participate in it. They are thus regarded as parties for purposes of

---

[7] Defendant also argues that "*Rooker-Feldman* applies to 'claims that are "inextricably intertwined" with a state court decision' even where a party to the federal court action was not joined in the state court action." *See* Doc. 20 at 2-3 (quoting *Gifford v. United N. Mortg. Bankers, Ltd.*, 2019 WL 2912489, at *5 (S.D.N.Y. 2019) (emphasis omitted)). This argument is misplaced. *See Hunter v. McMahon*, 75 F.4th 62, 72 (2d Cir. 2023) ("There is no separate inquiry into whether a claim is 'inextricably intertwined.'").

9

*Rooker-Feldman*[8] and are further considered "state-court losers" because the Vermont Superior Court ordered a foreclosure that was adverse to Plaintiffs' interests and claims to ownership of the Property. As the Vermont Supreme Court has observed, "[t]he whole point of [a foreclosure] decree is to determine the validity of the mortgage and to eliminate the interest in the property of third parties[.]" *Mortg. Lenders Network, USA v. Sensenich*, 2004 VT 107, ¶ 6, 177 Vt. 592, 594, 873 A.2d 892, 895.

The second *Rooker-Feldman* requirement is satisfied because Plaintiffs "complain" of the result of the state court foreclosure action which resulted in a judgment in favor of Defendant, a writ of possession in Defendant's favor, and Plaintiffs' eviction or voluntary removal from the Property. In seeking title to the Property and a declaration that Defendant has no ownership interest in it, Plaintiffs necessarily invite this court to review and reject the Vermont Superior Court's decisions.

Finally, because the Judgment and Decree of Foreclosure was entered in 2021 and this case was not filed until 2023, the fourth *Rooker-Feldman* requirement is also met because the Vermont Superior Court proceeding had concluded as of November 17, 2022, when it confirmed the sale. *See Vossbrinck*, 773 F.3d at 426 n.1 (noting that even if "proceedings continued after entry of the foreclosure judgment" with post-judgment filings does not mean "that the relevant state judgment was not rendered before the district court proceedings commenced for *Rooker-Feldman* purposes") (internal quotation marks omitted); *see also TBF Fin., LLC v. Gregoire*, 2015 VT 36, ¶ 20, 198 Vt. 607, 616, 118 A.3d 511, 518 ("[A] foreclosure decree is a final judgment even if a right to redeem

---

[8] Although Plaintiffs point out the Foreclosure Complaint was not noted on the mortgage deed itself as required by statute, that responsibility is assigned to the Town Clerk's office. *See* 12 V.S.A. § 4932(b) ("The clerk of the town shall minute on the margin of the record of the mortgage that a copy of foreclosure proceedings on the mortgage is filed."). Neither Defendant nor any other private person or entity had the authority to make this notation. Plaintiffs cite no authority that would impute the absence of a notation to Defendant. The Vermont Supreme Court has explained that "once the foreclosure complaint is recorded, no further notice is required to make interested parties subject to any forthcoming decree." *Mortg. Lenders Network, USA v. Sensenich*, 2004 VT 107, ¶ 5, 177 Vt. 592, 594, 873 A.2d 892, 895.

exists, and even if further proceedings ancillary to the foreclosure itself are contemplated.").

All four *Rooker-Feldman* factors have been met. *Rooker-Feldman* thus bars this court's reconsideration of a state court judgment even if Plaintiffs allege the state court judgment was obtained erroneously, fraudulently, or by a party that lacked standing. *See Vossbrinck*, 773 F.3d at 427 (federal court could not grant relief from foreclosure judgment despite claims that judgment was obtained fraudulently and plaintiff lacked standing because "[t]his would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error"); *see also Mortg. Lenders Network*, 2004 VT 107, ¶ 6, 177 Vt. at 594, 873 A.2d at 895. (explaining a final foreclosure decree "precludes the mortgagor, and any other bona fide purchaser, from contesting the . . . interest of the mortgagee.").

Because Plaintiffs ask the court "to grant [them] title to [the Property,] *Rooker-Feldman* bars [their] claim." *Vossbrinck*, 773 F.3d at 427. Defendant's motion to dismiss for lack of subject matter jurisdiction is therefore GRANTED with respect to Plaintiffs' claims seeking title to and possession of the Property, seeking injunctive relief related to a transfer of the Property or relief from the debt encumbered by it, as well as any claim that would effectively reverse or amend a state court decision.

### 2.    Whether to Dismiss Plaintiffs' Remaining Claims for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6).

Plaintiffs seek compensatory damages of $300,000, ostensibly for the value of the Property, due to Defendant's alleged fraud. They assert their claim of conversion, or "fraudulent theft[,]" of property is not a "re-litigation but a look in hindsight to see the truth and/or fraud continuing still today surrounding the practices of [Defendant]." (Doc. 19 at 4.) "[F]raud claims are not barred by *Rooker-Feldman* if (i) they seek damages for injuries suffered from the alleged fraud and (ii) their adjudication does not require the federal court to sit in review of the state court judgment." *Hylton*, 338 F. Supp. 3d at 275 (internal quotation marks omitted).

11

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.* (internal quotation marks and citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

Under Vermont law,

> [t]o maintain a cause of action for fraud, [a] plaintiff must demonstrate five elements: (1) intentional misrepresentation of a material fact; (2) that was known to be false when made; (3) that was not open to the defrauded party's knowledge; (4) that the defrauded party acted in reliance on that fact; and (5) is thereby harmed.

*Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 13, 200 Vt. 465, 472, 133 A.3d 836, 842 (alteration adopted) (internal quotation marks and footnote omitted). "Failure to prove any one of the five elements defeats the fraud claim." *Id.*

"Fraudulent misrepresentation can be accomplished affirmatively by false statement or by the concealment of facts by one who has a duty to disclose those facts." *Est. of Alden v. Dee*, 2011 VT 64, ¶ 32, 190 Vt. 401, 415, 35 A.3d 950, 961. "A central element of a fraud claim is that a misrepresentation be made as to a material fact, knowledge of which would be 'otherwise . . . unavailable to the purchasers in the exercise of their due diligence.'" *Lewis v. Cohen*, 603 A.2d 352, 354 (Vt. 1991) (quoting *Cheever v. Albro*, 421 A.2d 1287, 1290 (Vt. 1980)). "Plaintiffs may justifiably rely upon a representation when the representation is not obviously false and the truth of the representation is not within the knowledge of, or known by the plaintiffs." *Choiniere v. Marshall*, 2014 VT 117, ¶ 22, 198 Vt. 215, 223, 112 A.3d 723, 729 (quoting *Silva v. Stevens*, 589 A.2d 852, 860 (Vt. 1991)) (internal quotation marks omitted).

A plaintiff alleging fraud must also satisfy the pleading requirements of Fed. R. Civ. P. 9(b), which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> In essence, Rule 9(b) places two further burdens on fraud plaintiffs—the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state. As to the first, we have held that the complaint must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent. As to the second, though mental states may be pleaded "generally," Plaintiffs must nonetheless allege facts that give rise to a strong inference of fraudulent intent.

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (internal quotation marks and citations omitted).

"[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal quotation marks and citation omitted). A plaintiff must allege sufficient facts to demonstrate "the time, place,

speaker and sometimes even the content of the alleged misrepresentation." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579 (2d Cir. 2005) (internal quotation marks omitted).

Plaintiffs contend they acquired the Property from Mr. Morrow and acknowledge that, at the time of their acquisition, the Property was subject to a mortgage which was recorded in the land records. They allege a Foreclosure Complaint on file in the land records was defective because the Town Clerk failed to note the Foreclosure Complaint on the mortgage as required under Vermont law. Plaintiffs do not allege that they assumed the mortgage, paid the mortgage debt, or that they were unaware of the Foreclosure Complaint. They do not claim Defendant made a false statement they relied on in purchasing the Property. Their fraud claims, if any, thus appear to lie against Mr. Morrow, who allegedly sold them the Property.

As for whether the true facts were unknown to them, Plaintiffs repeatedly sought to participate in the Vermont Superior Court foreclosure action, filed several motions, and, at a November 13, 2022 hearing, argued that while Defendant had the right to foreclose on Mr. Morrow, because Plaintiffs held a deed to the Property, Defendant's foreclosure action against their interest was somehow improper. The Vermont Superior Court rejected Plaintiffs' arguments. Plaintiffs identify no material facts that were unknown to them in either their alleged purchase of the Property or the foreclosure proceedings.

Plaintiffs' fraud claim fails for the further reason that both the preexisting mortgage and the Foreclosure Complaint were matters of public record at the time they acquired a deed to the Property from Mr. Morrow. Even if the Town Clerk failed to note the Foreclosure Complaint on the mortgage, Plaintiffs do not assert they were unaware of it, and, by statute, they are charged with inquiry notice of it. *Mortg. Lenders Network*, 2004 VT 107, ¶ 5, 177 Vt. at 594, 873 A.2d at 895 ("once the foreclosure complaint is recorded . . . persons with an interest in the subject property are on inquiry notice"); *see also Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 484-85 (S.D.N.Y. 2015) (explaining a party may not claim justifiable reliance where a matter of

14

public record "could have been discovered through the exercise of ordinary diligence") (internal quotation marks omitted).

Before this court, Plaintiffs point to a Vermont Property Transfer Tax Return listing Jeanne Golrick as the transferor or seller that was filed after the foreclosure sale as proof of Defendant's fraud because Plaintiffs did not receive any money for the Property. *See* Doc. 21-5. Plaintiffs assert Defendant has "perhaps possession, but no deed, and a transfer tax document form, but no true money exchanged[.] [I]n short, no relief for their original 'foreclosure' claims." (Doc. 19 at 6.) They contend Defendant should pay them the amount of its mortgage as a purchase price for the Property. They cite no authority for this outcome.

With regard to the Transfer Tax Return, Plaintiffs did not rely on this document to their detriment or change their position due to it because the document *post-dates* their alleged purchase of the Property. They thus discovered the alleged fraudulent document well after any change in their position. In addition, Plaintiffs do not plausibly allege this document caused them monetary harm.

Because Plaintiffs have failed to plausibly plead the essential elements of a fraud claim with particularity, that claim must be dismissed. The "brute fact remains that the [] [m]ortgage was *not* discharged at the time Plaintiff[s] acquired [their] interest" in the Property and Plaintiffs have not established how they "acquire[d] the [P]roperty free and clear of this senior interest."[9] *Sterling Mortg. & Inv. Co. v. CitiMortgage, Inc.*, 2015 WL 1300018, at *9, 16 (E.D. Mich. Mar. 23, 2015) (emphasis in original). As a result, Defendant's motion to dismiss Plaintiffs' remaining claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is GRANTED.

---

[9] To the extent the court could construe Plaintiffs to claim unjust enrichment of Defendant by virtue of their improvements to the Property, there are no allegations that Defendant induced Plaintiffs to make improvements. Indeed, "any property owner incurs [risk] when expending money to improve a property that is subject to a mortgage." *In re Bennett*, 531 B.R. 68, 80 (E.D. Pa. 2015).

15

**B.      Leave to Amend.**

The Second Circuit has cautioned that a court "should not dismiss a pro se complaint without granting leave to amend at least once, unless amendment would be futile." *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (internal quotation marks omitted). "Amendment is futile where the problems with the complaint's claims are substantive and not the result of inartful pleading." *Biswas v. Rouen*, 808 F. App'x 53, 55 (2d Cir. 2020) (internal quotation marks and alteration omitted).

In this case, amendment of claims barred by *Rooker-Feldman* over which this court lacks subject matter jurisdiction, such as any claim seeking title to the Property, would be futile. The court, however, grants Plaintiffs leave to amend to seek to assert a plausible fraud or other claim that does not require the court to review, amend, or reverse the Vermont Superior Court's decisions. *See Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (explaining federal district courts do not sit as a court of appeals for the state courts); *see also Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (noting the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6).") (internal quotation marks omitted).

Plaintiffs are advised that a proposed Amended Complaint, if filed, will supersede and completely replace the original Complaint. *See Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018) (noting "it is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect") (brackets and internal quotation marks omitted). An Amended Complaint must include Plaintiffs' factual allegations in their entirety and must set forth the claims they allege against each defendant and all the relief they seek. It must comply with the Federal Rules of Civil Procedure, including setting forth a short and plain statement of the grounds for the court's subject matter jurisdiction as well as a short and plain statement of each claim as required by Rule 8 and satisfy the pleading requirements of Rule 9(b). It also must contain consecutively numbered paragraphs as required by Rule 10 and Plaintiffs' original signatures as required by Rule 11 certifying there is a good faith legal and factual basis for each claim.

16

For further reference, Plaintiffs may consult a sample Complaint as well as the court's Representing Yourself as a *Pro Se* Litigant Guide, available on the court's website at www.vtd.uscourts.gov/filing-without-attorney-1 or contact the District of Vermont Clerk's Office for a self-represented party's informational pamphlet.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Doc. 14) is GRANTED. Defendant's motion to stay discovery (Doc. 24) is DENIED AS MOOT. Plaintiffs may file an Amended Complaint that complies with this Order on or before January 22, 2024. Failure to file shall result in dismissal of the case.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 26th day of December, 2023.

Christina Reiss, District Judge
United States District Court